2. Article Number

7160 3901 9849 1050 4456

COMPLETE THIS SECTION ON DELIVERY

A. Received by (Please Print Clearly) T.R. BOWSER

B. Date of Delivery 6/2/06

C. Signature

x Theodore R. Bowser III ☑ Agent ☒ Addressee

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type **CERTIFIED MAIL**

4. Restricted Delivery? *(Extra Fee)* ☐ Yes

1. Article Addressed to:

Theodore R. Bowser, II
112 Cumberland Drive
Dothan, Alabama 36301

PS Form 3811, January 2005 Domestic Return Receipt

I certify this to be a true and correct copy of the original which is on file and enrolled in my office in Clayton or Eufaula, Barbour County, Alabama

Witness my hand and seal this 19th day of June 2006

David S. Nix, Clerk



2. Article Number

7160 3901 9849 1050 4418

3. Service Type CERTIFIED MAIL

4. Restricted Delivery? *(Extra Fee)* ☐ Yes

1. Article Addressed to:

Merck & Co., Inc.
Corporation Process Compnay
2000 Interstate Park Drive #204
Montgomery, Alabama 36019

COMPLETE THIS SECTION ON DELIVERY

A. Received by (Please Print C )

B. Date of Delivery 5/2/

C. Signature

X [signature]

☐ Agent
☐ Address

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

PS Form 3811, January 2005 Domestic Return Receipt

2. Article Number

7160 3901 9849 1050 4432

3. Service Type CERTIFIED MAIL

4. Restricted Delivery? *(Extra Fee)* ☐ Yes

1. Article Addressed to:

Tonya M. Locklin
203 Boulder Drive
Dothan, Alabama 36305

COMPLETE THIS SECTION ON DELIVERY

A. Received by (Please Print Clearly) Tonya Locklin

B. Date of Delivery 6/5/06

C. Signature

X [signature]

☐ Agent
☒ Addressee

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☒ No

PS Form 3811, January 2005 Domestic Return Receipt

2. Article Number

7160 3901 9849 1050 4425

3. Service Type CERTIFIED MAIL

4. Restricted Delivery? *(Extra Fee)* ☐ Yes

1. Article Addressed to:

Mark M. Sanders
106 Doncaster Way
Dothan, Alabama 36305

COMPLETE THIS SECTION ON DELIVERY

A. Received by (Please Print Clearly): MARK SANDERS
B. Date of Delivery: 6-6-06

C. Signature
X [signature]
☐ Agent
☑ Addressee

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

PS Form 3811, January 2005 Domestic Return Receipt

2. Article Number

7160 3901 9849 1050 4463

3. Service Type CERTIFIED MAIL

4. Restricted Delivery? *(Extra Fee)* ☐ Yes

1. Article Addressed to:

Eric Ralph Payne
201 Highland Drive
Enterprise, Alabama 36330

COMPLETE THIS SECTION ON DELIVERY

A. Received by (Please Print Clearly): Eric PayNe
B. Date of Delivery: 5-25-06

C. Signature
X [signature]
☑ Agent
☐ Addressee

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☑ No

PS Form 3811, January 2005 Domestic Return Receipt

ORIGINAL

PLEASE SERVE AND RETURN

DAVID S. NIX, CLERK
303 E. Broad Street
Room 201
Eufaula, Alabama 36027

State of Alabama
Unified Judicial System
Form C-15 Rev.10/92

# ORDER OF SERVICE AND RETURN

Case Number CV-06-82

IN THE CIRCUIT COURT OF BARBOUR, ALABAMA

ROSIE RUSSAW, et al. v. MERCK & CO., INC., et al.
Plaintiff Defendant

(For Juvenile cases only):
In the Matter of

TO ANY SHERIFF OF THE STATE OF ALABAMA OR ANY OTHER AUTHORIZED PERSON:

You are hereby commanded to deliver the attached document(s), namely

Anne Brandon
7 Lauderhill
Tuscalooosa, Alabama 35406

FILED
MAY 24 2006
DAVID S. NIX, CLERK
BARBOUR CO. ALABAMA

to (name)
at home address(*including city, state, and zip code*)

and make return to this court.

5/24/06
Date

Signature of Court Clerk By

RECEIVED
2006 MAY 31 P 5:07
SHERIFF
TUSCALOOSA COUNTY AL

RETURN ON SERVICE

I hereby certify that I personally delivered a copy of the attached document(s)

In Tuscaloosa County, Alabama to: Anne Brandon
(Name of County or Municipality)

on (Date) 06-01-06

Name:

Benjamin L. Locklar
**Beasley, Allen, Crow, Methvin, Portis & Miles**
Post Office Box 4160
Montgomery, Alabama 36103

Signature of Server

Deputy Sheriff
Type of Process Server

| State of Alabama<br>Unified Judicial System<br>Form C-15 Rev.10/92 | ORDER OF SERVICE AND RETURN | Case Number<br>CV-06-82 |
|---|---|---|

IN THE CIRCUIT COURT OF BARBOUR, ALABAMA

ROSIE RUSSAW, et al. v. MERCK & CO., INC., et al.
Plaintiff Defendant

(For Juvenile cases only):
In the Matter of

TO ANY SHERIFF OF THE STATE OF ALABAMA OR ANY OTHER AUTHORIZED PERSON:

You are hereby commanded to deliver the attached document(s), namely

Anne Brandon
7 Lauderhill
Tuscalooosa, Alabama 35406

FILED
MAY 24 2006
DAVID S. NIX, CLERK
BARBOUR CO. ALABAMA

to (name)
at home address(*including city, state, and zip code*)

and make return to this court.

Date Signature of Court Clerk By

RETURN ON SERVICE

I hereby certify that I personally delivered a copy of the attached document(s)

In ____________, Alabama to:
(*Name of County or Municipality*)

Name: on (Date)

Benjamin L. Locklar
**Beasley, Allen, Crow, Methvin, Portis & Miles**
Post Office Box 4160
Montgomery, Alabama 36103

Signature of Server

Type of Process Server

| State of Alabama<br>Unified Judicial System<br>Form C-15 Rev.10/92 | ORDER OF SERVICE AND RETURN | Case Number |
|---|---|---|

IN THE CIRCUIT COURT OF BARBOUR, ALABAMA

ROSIE RUSSAW, et al. v. MERCK & CO., INC., et al.
Plaintiff Defendant

(For Juvenile cases only):
In the Matter of

TO ANY SHERIFF OF THE STATE OF ALABAMA OR ANY OTHER AUTHORIZED PERSON:

You are hereby commanded to deliver the attached document(s), namely

Merck & Co., Inc.
c/o Corporation Process Company
2000 Interstate Park Drive, Suite 204
Montgomery, Alabama 36109

FILED
MAY 24 2006
DAVID S. NIX, CLERK
BARBOUR CO. ALABAMA

to (name)
at home address*(including city, state, and zip code)*

and make return to this court.

Date Signature of Court Clerk By

RETURN ON SERVICE

I hereby certify that I personally delivered a copy of the attached document(s)

In ______, Alabama to:
*(Name of County or Municipality)*

Name: on (Date)

Benjamin L. Locklar
**Beasley, Allen, Crow, Methvin, Portis & Miles**
Post Office Box 4160
Montgomery, Alabama 36103

Signature of Server

Type of Process Server

Certified Article Number
7160 3901 9849 1050 4418
SENDERS RECORD

| State of Alabama<br>Unified Judicial System<br>Form C-15 Rev.10/92 | ORDER OF SERVICE AND RETURN | Case Number |
|---|---|---|

IN THE CIRCUIT COURT OF BARBOUR, ALABAMA

ROSIE RUSSAW, et al. (Plaintiff) v. MERCK & CO., INC., et al. (Defendant)

(For Juvenile cases only):
In the Matter of ____

TO ANY SHERIFF OF THE STATE OF ALABAMA OR ANY OTHER AUTHORIZED PERSON:

You are hereby commanded to deliver the attached document(s), namely ____

Mark M. Sanders
106 Doncaster Way
Dothan, Alabama 36305

FILED
MAY 24 2006
DAVID S. NIX, CLERK
BARBOUR CO. ALABAMA

to (name) ____

at home address *(including city, state, and zip code)* ____

and make return to this court.

Date ____ Signature of Court Clerk ____ By ____

**RETURN ON SERVICE**

I hereby certify that I personally delivered a copy of the attached document(s)

In ____, Alabama to:
*(Name of County or Municipality)*

on (Date) ____

Benjamin L. Locklar
**Beasley, Allen, Crow, Methvin, Portis & Miles**
Post Office Box 4160
Montgomery, Alabama 36103

Signature of Server ____

Type of Process Server ____

Certified Article Number
7160 3901 9849 1050 4425
SENDERS RECORD

| State of Alabama<br>Unified Judicial System<br>Form C-15 Rev.10/92 | ORDER OF SERVICE AND RETURN | Case Number |
|---|---|---|

IN THE CIRCUIT COURT OF BARBOUR, ALABAMA

ROSIE RUSSAW, et al. v. MERCK & CO., INC., et al.
Plaintiff Defendant

(For Juvenile cases only):
In the Matter of

TO ANY SHERIFF OF THE STATE OF ALABAMA OR ANY OTHER AUTHORIZED PERSON:

You are hereby commanded to deliver the attached document(s), namely

Tonya M. Locklin
203 Boulder Drive
Dothan, Alabama 36305

FILED
MAY 24 2006
DAVID S. NIX, CLERK
BARBOUR CO. ALABAMA

to (name)
at home address(*including city, state, and zip code*)

and make return to this court.

Date Signature of Court Clerk By

RETURN ON SERVICE

I hereby certify that I personally delivered a copy of the attached document(s)

In ______, Alabama to:
*(Name of County or Municipality)*

Name:
Benjamin L. Locklar
**Beasley, Allen, Crow, Methvin, Portis & Miles**
Post Office Box 4160
Montgomery, Alabama 36103

on (Date)

Signature of Server

Type of Process Server

Certified Article Number
7160 3901 9849 1050 4432
SENDERS RECORD

| State of Alabama<br>Unified Judicial System<br>Form C-15 Rev.10/92 | ORDER OF SERVICE AND RETURN | Case Number |
|---|---|---|

IN THE CIRCUIT COURT OF BARBOUR, ALABAMA

ROSIE RUSSAW, et al.
Plaintiff

v.

MERCK & CO., INC., et al.
Defendant

(For Juvenile cases only):
In the Matter of ____________________

TO ANY SHERIFF OF THE STATE OF ALABAMA OR ANY OTHER AUTHORIZED PERSON:

You are hereby commanded to deliver the attached document(s), namely ____________________

Joe D. Read
128 Falkirk Drive
Dothan, Alabama 36305

FILED
MAY 24 2006
DAVID S. NIX, CLERK
BARBOUR CO. ALABAMA

to (name) ____________________

at home address*(including city, state, and zip code)* ____________________

and make return to this court.

Date ____________________ Signature of Court Clerk ____________________ By ____________________

## RETURN ON SERVICE

I hereby certify that I personally delivered a copy of the attached document(s)

In ____________________, Alabama to:
*(Name of County or Municipality)*

Name: ____________________ on (Date) ____________________

Benjamin L. Locklar
**Beasley, Allen, Crow, Methvin, Portis & Miles**
Post Office Box 4160
Montgomery, Alabama 36103

Signature of Server ____________________

Type of Process Server ____________________

**Certified Article Number**
7160 3901 9849 1050 4449
**SENDERS RECORD**

| State of Alabama<br>Unified Judicial System<br>Form C-15 Rev.10/92 | ORDER OF SERVICE AND RETURN | Case Number |
|---|---|---|

IN THE CIRCUIT COURT OF BARBOUR, ALABAMA

ROSIE RUSSAW, et al. v. MERCK & CO., INC., et al.
Plaintiff Defendant

(For Juvenile cases only):
In the Matter of ______

TO ANY SHERIFF OF THE STATE OF ALABAMA OR ANY OTHER AUTHORIZED PERSON:

You are hereby commanded to deliver the attached document(s), namely ______

Theodore R. Bowser, II
112 Cumberland Drive
Dothan, Alabama 36301

FILED
MAY 24 2006
DAVID S. NIX, CLERK
BARBOUR CO. ALABAMA

to (name) ______
at home address(*including city, state, and zip code*) ______

and make return to this court.

______ Date ______ Signature of Court Clerk By ______

**RETURN ON SERVICE**

I hereby certify that I personally delivered a copy of the attached document(s)

In ______, Alabama to:
*(Name of County or Municipality)*

Name:
Benjamin L. Locklar
**Beasley, Allen, Crow, Methvin, Portis & Miles**
Post Office Box 4160
Montgomery, Alabama 36103

on (Date) ______

______ Signature of Server

______ Type of Process Server

Certified Article Number
7160 3901 9849 1050 4456
SENDERS RECORD

| State of Alabama<br>Unified Judicial System<br>Form C-15 Rev.10/92 | ORDER OF SERVICE AND RETURN | Case Number |
|---|---|---|

IN THE CIRCUIT COURT OF BARBOUR, ALABAMA

ROSIE RUSSAW, et al. v. MERCK & CO., INC., et al.
Plaintiff — Defendant

(For Juvenile cases only):
In the Matter of

TO ANY SHERIFF OF THE STATE OF ALABAMA OR ANY OTHER AUTHORIZED PERSON:

You are hereby commanded to deliver the attached document(s), namely

Eric Ralph Payne
201 Highland Drive
Enterprise, Alabama 36330

FILED
MAY 24 2006
DAVID S. NIX, CLERK
BARBOUR CO. ALABAMA

to (name)

at home address(*including city, state, and zip code*)

and make return to this court.

Date — Signature of Court Clerk — By

**RETURN ON SERVICE**

I hereby certify that I personally delivered a copy of the attached document(s)

In ______, Alabama to:
*(Name of County or Municipality)*

Name:

Benjamin L. Locklar
**Beasley, Allen, Crow, Methvin, Portis & Miles**
Post Office Box 4160
Montgomery, Alabama 36103

on (Date)

Signature of Server

Type of Process Server

**Certified Article Number**
7160 3901 9849 1050 4463
**SENDERS RECORD**

| State of Alabama<br>Unified Judicial System<br>Form C-34 Rev 6/88 | **SUMMONS**<br>**- CIVIL -** | Case Number |
|---|---|---|

IN THE CIRCUIT COURT OF BARBOUR COUNTY

Plaintiff v. Defendant

FILED
MAY 24 2006
DAVID S. NIX, CLERK
BARBOUR CO. ALABAMA

NOTICE TO ______

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE PLAINTIFF OR PLAINTIFF'S ATTORNEY BENJAMIN L. LOCKLAR WHOSE ADDRESS IS P.O. BOX 4160, MONTGOMERY, ALABAMA 36103.

THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN 30 DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

---

TO ANY SHERIFF OR ANY PERSON AUTHORIZED by the Alabama Rules of Civil Procedure:

☐ You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant.

☐ Service by certified mail of this summons is initiated upon the written request of ______ pursuant to the Alabama Rules of Civil Procedure.

Date ______ ______ By: ______

Clerk/Register

---

☐ Certified Mail is hereby requested. ______

Plaintiff's/Attorney's Signature

---

RETURN ON SERVICE:

☐ Return receipt of certified mail received in this office on ______.
(Date)

☐ I certify that I personally delivered a copy of the Summons and Complaint to ______ in ______ County, Alabama on ______.
(Date)

______ Date

______ Server's Signature

______ Address of Server

______ Type of Process Server

**IN THE CIRCUIT COURT OF**
**BARBOUR COUNTY, ALABAMA**

**ROSIE RUSSAW, as personal representative of the Estate of JOHN WILLIAMS, deceased,**

**PLAINTIFF,**

**v.**

**CASE NO.** CV-06-82

**MERCK & CO., INC., a foreign Corporation; ANNE BRANDON, an Individual; MARK M. SANDERS, an Individual; TONYA M. LOCKLIN, an Individual; JOE D. READ, an individual; THEODORE R. BOWSER, II, an Individual; ERIC RALPH PAYNE, an Individual; and fictitious defendants A, B, C & D, being those persons, firms or Corporations whose fraud, scheme to defraud, and/or other wrongful conduct caused or contributed to the Plaintiff's injuries and damages, and whose true names and identities are presently unknown to Plaintiff, but will be substituted by amendment when ascertained,**

**DEFENDANTS.**

FILED
MAY 24 2006
DAVID S. NIX, CLERK
BARBOUR CO. ALABAMA

**COMPLAINT**

COMES NOW the Plaintiff, **ROSIE RUSSAW**, individually and on behalf of John Williams, deceased, Plaintiff, complaining of Merck & Co., Inc., individual sales representatives Anne Brandon, Mark M. Sanders, Tonya M. Locklin, Joe D. Read, Theodore R. Bowser, II, Eric Ralph Payne, and fictitious defendants A, B, C & D, ("Defendants"), and for Plaintiff's cause of action against the Defendants states as follows:

**Statement of the Parties**

1. This is a civil action brought by Plaintiff Rosie Russaw, on behalf of her decedent, John Williams, for his death. Plaintiff's decedent was prescribed and used the

prescription medication VIOXX® (rofecoxib). This action seeks monetary damages for the wrongful death caused by the prescription medication VIOXX® (rofecoxib) ingested by Plaintiff's decedent.

2. Plaintiff Rosie Russaw is over the age of nineteen (19) years and is a resident of Henry County, Alabama. Rosie Russaw appears as the personal representative of the Estate of John Williams, deceased. Application has been filed with the Probate Court of Barbour County, Alabama, to appoint her in this capacity and it is expected that she will be appointed in this capacity in short order.

3. Plaintiff's decedent, John Williams, was an adult resident of Barbour County, Alabama at the time of his death.

4. Defendant Merck & Co., Inc. (hereinafter referred to as "Merck"), is incorporated in the State of New Jersey and has its principal place of business in White House Station, New Jersey. At all times relevant herein, Merck was in the business of designing, testing, manufacturing, labeling, advertising, marketing, promoting, selling and distributing pharmaceuticals and other products, including VIOXX®. Merck does business by agent in Alabama and, on information and belief, at all times relevant, advertised, marketed, promoted, sold and/or distributed VIOXX® in Barbour County, Alabama. Defendant Merck can be served through its registered agent: Corporation Process Company, 2000 Interstate Park Drive, Suite 204, Montgomery, Alabama 36109.

5. Based upon information and belief, Defendant Anne Brandon is a district sales manager for Defendant Merck, and is a resident of Tuscaloosa County, Alabama. It is reasonably believed that Defendant Brandon oversaw the management, training and direction of the Merck Sales staff in the State of Alabama and committed these wrongful

acts described herein. Defendant Anne Brandon can be served at her home address: 7 Lauderhill, Tuscaloosa, Alabama 35406.

6. Based upon information and belief, Defendants Mark M. Sanders, Tonya M. Locklin, Joe D. Read, Theodore R. Bowser, II, and Eric Ralph Payne, are sales representatives for Defendant Merck, and are residents of Houston County or Coffee County, Alabama who it is reasonably believed detailed and/or called upon the physician or physicians who prescribed VIOXX® to the decedent and committed the wrongful acts described herein. Defendants Mark M. Sanders, Tonya M. Locklin, Joe D. Read, Theodore R. Bowser, II, and Eric Ralph Payne can be served at their home address as follows:

a. Mark M. Sanders
106 Doncaster Way
Dothan, Alabama 36305

b. Tonya M. Locklin
203 Boulder Drive
Dothan, Alabama 36305

c. Joe D. Read
128 Falkirk Drive
Dothan, Alabama 36305

d. Theodore R. Bowser, II
112 Cumberland Drive
Dothan, Alabama 36301

e. Eric Ralph Payne
201 Highland Drive
Enterprise, Alabama 36330

7. Fictitious Defendants A, B, C & D, are other legal persons (including retailers, pharmacies, sales representatives and manufacturers) who manufactured, labeled, advertised, marketed, promoted, sold and/or distributed VIOXX® in Alabama, or who detailed, discussed with, or provided materials to physicians and healthcare providers in the State of Alabama.

8. When the word "Defendants" is used herein, it is meant to refer to all real and fictitious Defendants mentioned in the style of this Complaint, all of whom are jointly and severally liable to Plaintiff for Plaintiff's decedent's injuries and death.

9. At all times material to this complaint, each Defendant acted as an agent for each of the other Defendants, within the course and scope of the agency, regarding the acts and omissions alleged herein, and are therefore jointly and severally liable to Plaintiff for Plaintiff's decedent's injuries and death.

**Statement of the Facts**

10. This is a civil action brought by the Plaintiff, Rosie Russaw, as the personal representative of the estate of her father, John Williams, deceased. John Williams was prescribed and used the prescription medication VIOXX® for approximately 37 months and said use of the drug VIOXX® by him caused him to suffer a heart attack and die suddenly and unexpectedly on May 24, 2004.

11. Personal jurisdiction and subject matter jurisdiction are appropriate in this court as to all Defendants, as all Defendants have sold VIOXX® in Alabama, in or near Barbour County, either directly or by agent, with the actual or constructive knowledge that the VIOXX® they sold would ultimately be ingested by consumers in the Barbour County, Alabama area, including John Williams.

12. The Defendants sold VIOXX® in Alabama, in or near Barbour County, either directly or by agent, with knowledge, actual or constructive, that the VIOXX® they sold would ultimately be ingested by John Williams, and Defendants knew or reasonably should have known that John Williams would be injured, harmed or killed as a result of his ingestion of VIOXX®. Venue is proper in Barbour County as to all

Defendants. The claims set forth herein satisfy the jurisdictional requirements of this Court.

13. VIOXX® was a prescription drug designed to treat pain through reduced inflammation; VIOXX® was a COX-2 selective non-steroidal anti-inflammatory drug (NSAID). Defendants did manufacture, design, package, market, sell and distribute this drug. The Defendants encouraged the use of this drug through an aggressive marketing campaign, including through its detail sales representatives and direct-to-consumers. Defendants misrepresented the safety and efficacy of its drug and concealed or understated its dangerous side effects. Defendants' actions combined, concurred and contributed to cause John Williams's injuries and death. Defendants are jointly and severally liable, as more specifically set forth herein, for the death caused to John Williams and the damages suffered by him and to his estate.

14. At all times relevant hereto, Defendants actually knew of the defective nature of their product as herein set forth, yet continued to design, manufacture, market, distribute and sell their product so as to maximize sales and profits at the expense of the general public's health and safety in conscious disregard of the foreseeable harm caused by these products. Defendants' conduct exhibited such an entire want of care as to establish that their actions were a result of fraud, ill will, recklessness, gross negligence or willful and intentional disregard to the Plaintiff's decedent's individual rights; hence, punitive damages are appropriate, just, and warranted under the facts and circumstances of this cause and in accordance with the Wrongful Death Statute of Alabama.

15. John Williams was prescribed and used the prescription medication VIOXX® for approximately 37 months before suffering a fatal heart attack on May 24,

2004. John Williams ingested the prescription medication VIOXX® in Barbour County, Alabama and the damages and injuries resulting from his use of the prescription medication VIOXX® occurred in Barbour County, Alabama. John Williams was 82 years old at the time of his death.

**COUNT I – PRODUCT LIABILITY AND/OR FAILURE TO WARN**

16. Plaintiff realleges all prior paragraphs of this complaint as if fully set out herein.

17. The pharmaceutical VIOXX®, designed, manufactured, sold and/or supplied by Defendant Merck, was placed into the stream of commerce in a defective and unreasonably dangerous condition as designed, taking into account the utility of the product and the risk involved in its use.

18. Further, the pharmaceutical VIOXX®, designed, manufactured, distributed, sold and/or supplied by Defendant Merck, was defective in its marketing due to inadequate warnings or instructions, independently and when coupled with the drug company's aggressive marketing campaign.

19. The pharmaceutical VIOXX®, designed, manufactured, distributed, sold, and/or supplied by Defendant Merck, was defective due to inadequate testing.

20. Additionally, Defendant Merck failed to provide timely and adequate warnings or instructions after the manufacturer knew of the risks of injury and death to those who might take the drug VIOXX®.

21. Defendants sales representatives and/or fictitious defendants A, B, C & D, participated in the sales, marketing and supplying of VIOXX® to prescribing physicians, the healthcare community, and consumers, and along with Defendant Merck failed to

provide fair and adequate warnings about the dangerous and defective nature of VIOXX®.

22. All Defendants had and possessed superior knowledge of VIOXX® over physicians, the healthcare community, and consumers.

23. The defective nature of this product was the sole cause or was a significant contributing cause to the death of John Williams.

**WHEREFORE,** the Plaintiff demands a money judgment against Defendants in such an amount as a jury deems reasonable, just and appropriate, and seeks interest and the costs of these proceedings.

**COUNT II – NEGLIGENCE**

24. Plaintiff realleges all prior paragraphs of this complaint as if fully set out herein.

25. Defendant Merck had a duty to exercise reasonable care in the design, manufacture, marketing, sale, testing and/or distribution of VIOXX® into the stream of commerce. Defendant Merck failed to exercise ordinary care in the design, manufacture, marketing, sale, testing and/or distribution of VIOXX® into the stream of commerce. Defendant Merck knew or reasonably should have known that VIOXX® created an unreasonable risk of bodily harm or injury, including the risk of death, to those who would and did take its drug.

26. Despite the fact that the Defendant Merck knew or reasonably should have known that VIOXX® created unreasonably dangerous side effects and risks, which many users would be unable to remedy by any means, the Defendant Merck continued to

market VIOXX® to the consuming public when there were adequate and safer alternative methods of treatment or opportunities for more meaningful warnings.

27. Defendants sales representatives and/or fictitious parties A, B, C & D, acted independently or in conjunction with Defendant Merck to negligently market, sell and distribute VIOXX® in to the stream of commerce as set out herein.

28. Defendant Merck and Defendant Sales Representatives knew or reasonably should have known that consumers such as John Williams would foreseeably suffer injury or death as a result of their failure to exercise ordinary care as described herein. Defendant Merck's conduct was the sole cause or was a significant contributing cause to the death of John Williams.

**WHEREFORE,** the Plaintiff demands a money judgment against Defendants in such an amount as a jury deems reasonable, just and appropriate, and seeks interest and the costs of these proceedings.

**COUNT III – BREACH OF EXPRESS WARRANTY**

29. Plaintiff realleges all prior paragraphs of this complaint as if fully set out hereto.

30. Defendants, jointly and severally, made express representations to John Williams relative to its product, VIOXX®, directly and/or through his prescribing physician.

31. More specifically, Defendant Merck, through its detail sales representatives or through direct-to-consumer advertising, made misrepresentations regarding the safety and efficacy of its product, VIOXX®.

32. VIOXX® does not conform to the express representations made to prescribing physicians and the consuming public, including John Williams.

33. Likewise, VIOXX® does not conform to the express representations made by the Defendant Merck's agents/sales representatives.

34. Defendants' conduct in this matter was the sole cause or was a significant contributing cause of the death of John Williams.

**WHEREFORE**, the Plaintiff demands a money judgment against Defendants in such an amount as a jury deems reasonable, just and appropriate, and seeks interest and the costs of these proceedings.

## COUNT IV – BREACH OF IMPLIED WARRANTY

35. Plaintiff realleges all prior paragraphs of the Complaint as if fully set out herein.

36. At the time Defendant Merck marketed, sold and distributed VIOXX® for use by the general consuming public, including John Williams, the Defendant knew of the use for which VIOXX® was intended and impliedly warranted the product to be of merchantable quality, and safe and fit for such use.

37. John Williams reasonably relied upon the skill and judgment of Defendant Merck as to whether VIOXX® was of merchantable quality, and safe and fit for its intended use.

38. Contrary to such implied warranty, VIOXX® was not of merchantable quality, or safe or fit for its intended use, because the product was unreasonably dangerous and unfit for the ordinary purposes for which they were intended and used as described above.

39. Defendant's conduct in this regard was the sole or was a significant contributing cause of the death of John Williams.

**WHEREFORE,** the Plaintiff demands a money judgment against Defendants in such an amount as a jury deems reasonable, just and appropriate, and seeks interest and the costs of these proceedings.

**COUNT V – FRAUD**

40. Plaintiff realleges all prior paragraphs of the Complaint as if fully set out herein.

41. Defendants negligently, recklessly, intentionally and fraudulently made material misrepresentations that VIOXX® was safe and effective. Defendants represented VIOXX® as safe so that prescribing physicians and the general consuming public, including John Williams, would rely upon said representations when prescribing or purchasing said product.

42 Prior to and following the introduction of VIOXX® into the market as a prescribable pharmaceutical medication, Defendants set in motion a campaign to market its product. Defendants' representations made concerning VIOXX® as a safe and effective drug were made so that John Williams, the general consuming public, and prescribing physicians would rely on said representations and take the drug. In fact, John Williams's prescribing physician and John Williams did rely on Defendants' representations in this regard. John Williams's prescribing physician prescribed the drug as a safe NSAID, and John Williams took the drug in full reliance that the drug was safe and effective for its intended purpose.

43. At the time Defendants made these representations, however, they were aware that these representations were false and said Defendants, with full knowledge of the falsity of the representations, made the representations with reckless disregard to the falsity thereof. As a result of Defendants' fraudulent conduct and misrepresentation, John Williams suffered a serious cardiac event and resulting death.

**WHEREFORE,** the Plaintiff demands a money judgment against Defendants in such an amount as a jury deems reasonable, just and appropriate, and seeks interest and the costs of these proceedings.

**COUNT VI – FRAUDULENT MISREPRESENTATION**

44. Plaintiff realleges and incorporates the original complaint and all prior paragraphs of this amended complaint as if fully set out herein.

45. Defendant Merck trained its sales representatives, through programs such as the "VIOXX® Obstacle Dodge Ball Program," the "Obstacle Response Guide for VIOXX" and "Top Ten Obstacle Handlers" to misstate and misrepresent the truly dangerous nature of VIOXX® to prescribing physicians.

46. These programs were specifically designed and promulgated by Defendant Merck to train Merck sales representatives such as the individual defendants, Anne Brandon, Mark M. Sanders, Tonya M. Locklin, Joe D. Read, Theodore R. Bowser, II, and Eric Ralph Payne, to mislead prescribing physicians about the safety of VIOXX®.

47. These programs were specifically designed and promulgated by Defendant Merck to mislead prescribing physicians about the life threatening side effects, including myocardial infarction and sudden cardiac death, of VIOXX®.

48. Defendant Merck trained its sales representative force, including Anne Brandon, Mark M. Sanders, Tonya M. Locklin, Joe D. Read, Theodore R. Bowser, II, and Eric Ralph Payne, to utilize its "Dodge Ball" and "Obstacle Avoidance" programs during the sales representatives' interactions with or calls upon prescribing physicians.

49. These programs were utilized by sales representatives Anne Brandon, Mark M. Sanders, Tonya M. Locklin, Joe D. Read, Theodore R. Bowser, II, and Eric Ralph Payne to "dodge" relevant safety questions by physicians to whom they sold VIOXX®. Indeed, these programs provided specific responses and representations that were to be made by Merck sales representatives to physicians during sales calls or in response to physician questions. These Merck mandated responses misrepresented the safety of VIOXX®.

50. The VIOXX® Obstacle Dodge Ball Program identifies and categorizes physician safety questions as "obstacles" to Merck's sales force. (Exhibit "A"). The "Dodge Ball" program specifically instructs sales representatives, including Anne Brandon, Mark M. Sanders, Tonya M. Locklin, Joe D. Read, Theodore R. Bowser, II, and Eric Ralph Payne to "dodge" these physician safety related questions/obstacles. Indeed, the last few pages of the "Dodge Ball" instruction manual simply state "DODGE," "DODGE," and "DODGE." Id. The safety questions to be "dodged" by sales representatives, including Anne Brandon, Mark M. Sanders, Tonya M. Locklin, Joe D. Read, Theodore R. Bowser, II, and Eric Ralph Payne include, inter alia, questions such as, "I am concerned about the cardiovascular effects of VIOXX®," and "The competition has been in my office telling me that the incidence of heart attacks is greater with VIOXX® than CELEBREX®." Id.

51. Additional sales representative guidelines provide specific answers to physician questions/obstacles (such as those noted above) that were to be recited by sales representatives, including Anne Brandon, Mark M. Sanders, Tonya M. Locklin, Joe D. Read, Theodore R. Bowser, II, and Eric Ralph Payne. (Exhibits "B" and "C"). Exhibit "C" outlines the "Top Ten Obstacle Handlers" for sales representatives (Exhibit "C"). The top three "obstacles" listed on the sales guidelines are physician safety questions involving VIOXX® related "Cardiovascular Events." (Exhibit "C"). Sales representatives, including, Anne Brandon, Mark M. Sanders, Tonya M. Locklin, Joe D. Read, Theodore R. Bowser, II, and Eric Ralph Payne were thereafter provided with specific misrepresentations to make to the concerned physicians about the safety of VIOXX®. For example, bulletins from Merck to its sales representatives state, "in response to recent published reports about VIOXX® on May 1, 2000, we provided you with an approved verbal response to use to address customers questions around the incidence rate of MI's [myocardial infarctions] on patients taking VIOXX®..." (Exhibit "D": Bulletin for VIOXX®: New PIRs Relative to VIOXX® GI Outcomes Research Study.) Sales representatives, such as, Anne Brandon, Mark M. Sanders, Tonya M. Locklin, Joe D. Read, Theodore R. Bowser, II, and Eric Ralph Payne were therefore required to misrepresent that VIOXX® does not increase the rate of myocardial infarctions' when compared with NSAID's. This misrepresentation was false and inaccurate, yet was intentionally, knowingly, recklessly, wantonly and/or negligently made to treating physicians, including John Williams' prescribing physician, by the individually named sales representatives, Anne Brandon, Mark M. Sanders, Tonya M.

Locklin, Joe D. Read, Theodore R. Bowser, II, and Eric Ralph Payne. (Exhibit "C", Obstacle Response 38; and Exhibit "E", page 7; "Bulletin for VIOXX®").

52. Defendant Merck's sales representatives, specifically, Anne Brandon, Mark M. Sanders, Tonya M. Locklin, Joe D. Read, Theodore R. Bowser, II, and Eric Ralph Payne utilized the misrepresentations contained in the obstacle avoidance programs to mislead John Williams' treating physician concerning the safety of VIOXX® and the occurrence of life threatening side effects, such as myocardial infarctions and sudden cardiac deaths, from the usage of VIOXX®.

53. Defendant Merck and the individually named sales representatives further misrepresented the safety of VIOXX® to prescribing physicians by providing written literature to the doctors that contained false statements about VIOXX®'s safety. Such literature would be forwarded to the physician who posed questions/obstacles to the sales representatives after the sales representatives had concluded their meeting with the physicians. Exhibit "G" is the specific "In Response To Your Questions" follow-up literature that misrepresents VIOXX®'s cardiovascular safety. (Exhibit "G"; " In Response To Your Questions: Cardiovascular System").

54. Sales representatives, including Anne Brandon, Mark M. Sanders, Tonya M. Locklin, Joe D. Read, Theodore R. Bowser, II, and Eric Ralph Payne, were also ordered to send follow-up letters to physicians with whom they met who had posed questions/obstacles. Exhibit "H" is an example of a form sales representative letter to a questioning physician that misrepresents that VIOXX® does not increase the risk of adverse cardiovascular events in users. (Exhibit "H".)

55. The culture of misrepresenting the safety of VIOXX® by Merck and its sales representatives, including Anne Brandon, Mark M. Sanders, Tonya M. Locklin,

Joe D. Read, Theodore R. Bowser, II, and Eric Ralph Payne, was so prevalent that the false and misleading "Obstacle Responses" used by the sales force were manipulated and altered in response to media scrutiny concerning the cardiovascular safety of VIOXX®. (Exhibit "I": "Action Required: Response to New York Times Article" and Exhibit "J": "Action Required" REVISED Response to New York Times Article"). Merck sales representatives utilized such Obstacle Response Revisions to continually mislead prescribing physicians, including John Williams' prescribing physician, about the safety hazards of VIOXX®.

56. The underlying inducement for both Merck and its sales representatives, including Anne Brandon, Mark M. Sanders, Tonya M. Locklin, Joe D. Read, Theodore R. Bowser, II, and Eric Ralph Payne, to make repeated misrepresentations to physicians about the safety of VIOXX® was, and still is, money. The more doctors prescribing VIOXX®, the more money Merck made. The more doctors the sales representatives, such as Anne Brandon, Mark M. Sanders, Tonya M. Locklin, Joe D. Read, Theodore R. Bowser, II, and Eric Ralph Payne, cajoled into prescribing VIOXX®, the more money and non-monetary bonuses the sales representatives received. (Exhibits "K": "Field Incentive Plan for VIOXX®"; and L: "Field Incentive Plan for VIOXX®."). Thus, sales representatives, such as Anne Brandon, Mark M. Sanders, Tonya M. Locklin, Joe D. Read, Theodore R. Bowser, II, and Eric Ralph Payne had a financial interest in propagating and promulgating the false and misleading information (i.e., obstacle responses) outlined above to as many prescribing physicians as possible, including John Williams' prescribing physician.

57. Both John Williams and his prescribing physician reasonably relied, to their detriment, upon the false oral and written misrepresentations of Merck, Anne Brandon, Mark M. Sanders, Tonya M. Locklin, Joe D. Read, Theodore R. Bowser, II, and Eric Ralph Payne concerning the safety of VIOXX® and the absence of adverse cardiovascular events in users. Such reasonable reliance induced John Williams's treating physician to prescribe him VIOXX® and further induced John Williams to utilize the dangerous drug VIOXX®. As a direct and proximate result of John Williams's usage of VIOXX® he suffered a heart attack and died.

**WHEREFORE,** the Plaintiff demands a money judgment against Defendants in such an amount as a jury deems reasonable, just and appropriate, and seeks interest and the costs of these proceedings.

**COUNT VII - FRAUD SUPPRESSION AND CONCEALMENT**

58. Plaintiff realleges all prior paragraphs of the Complaint as if fully set out herein.

59. With knowledge of the matters set forth herein, specifically the cardiovascular and cerebrovascular risks associated with taking VIOXX®, Defendants mistakenly, innocently, intentionally, willfully, knowingly and/or recklessly withheld the true dangers of the drug from the medical community, from prescribing physicians, and from the consuming public, including John Williams and his physician.

60. Defendants instituted a number of programs and implemented numerous methods to carry out its scheme to mislead the medical community and consumers about the dangerous nature of the drug VIOXX®, and likewise used these same devices to hide the truth of the dangerousness of the drug from those outside of the company. These

programs included "Dodge Ball," "Obstacle" avoidance, and "Project Offense," to name a few, whereby the employees and staff of Defendant Merck, including the Defendants named herein, were taught to lie to physicians and withhold important scientific data from the physicians and their patients. Defendant Merck and its staff, including the named Defendants, had knowledge superior to that of the average and reasonable physician and person who would consume the drug.

61. Had physicians and the medical and scientific communities truly understood the dangerous nature of the drug VIOXX®, it is reasonable to assume that physicians would have fully informed their patients of the drug's dangerous propensities, including the fact that it statistically increased the risks of cardiovascular and cerebrovascular events over other, traditional, and equally effective NSAIDs. Reasonable physicians and their patients could have used the full information known to Merck about VIOXX® to resolve and determine that the drug's risks greatly outweighed the benefits.

62. But for the Defendants' material misrepresentations, suppressions, and concealment of critical information relative to VIOXX®, John Williams would not have ingested VIOXX® and, consequently, would not have suffered a heart attack and would not have suffered the resulting injuries and damages, including death, as set forth in more detail herein. As the direct and proximate result of the Defendants' fraudulent conduct, John Williams suffered a serious cardiac event and resulting death.

**WHEREFORE**, the Plaintiff demands a money judgment against Defendants in such an amount as a jury deems reasonable, just and appropriate, and seeks interest and the costs of these proceedings.

**COUNT VIII– WRONGFUL DEATH**

63. Plaintiff repeats and realleges each of the allegations contained in the Complaint as if fully set forth herein.

64. Plaintiff brings this claim on her behalf and on behalf of John Williams, deceased.

65. As a direct and proximate result of the conduct of Defendants and/or the defective nature of VIOXX®, John Williams suffered bodily injury and resulting pain and anguish, loss of capacity of the enjoyment of life, shortened life expectancy, expenses of hospitalization, medical nursing care and treatment, loss of earnings, loss of ability to earn money, and premature death.

66. As a direct and proximate result of Defendants' wrongful conduct, John Williams incurred hospital, nursing, and medical expenses. John Williams' beneficiaries have incurred hospital, nursing, medical, funeral and estate administration expenses as a result of his death.

67. By reason of the foregoing, Plaintiff has been damaged by the negligent, wantonness, willfulness and recklessness of these Defendants.

**WHEREFORE**, the Plaintiff demands a money judgment against Defendants in such an amount as a jury deems reasonable, just and appropriate, and seeks interest and the costs of these proceedings.

**DAMAGES**

68. Upon the trial of this case, it will be shown that Plaintiff was caused to sustain injuries, damages and death as a direct and proximate result of Defendants' conduct, individually, separately, and in concert; and Plaintiff would respectfully request

the Court and jury to determine the amount of loss Plaintiff has suffered and incurred, in the past and in the future.

69. At all times relevant hereto, Defendants actually knew of the defective nature of their product as herein set forth and continued to design, manufacture, market, distribute and sell their product so as to maximize sales and profits at the expense of the public health and safety in conscious disregard of the foreseeable harm caused by this product. Defendants' conduct exhibits such an entire want of care as to establish that their actions were a result of fraud, ill-will, recklessness, gross negligence, or willful or intentional disregard of the Plaintiff's individual rights. The Plaintiff, therefore, is entitled to punitive damages from the corporate and individual Defendants, as more specifically set forth herein.

70. Plaintiff hereby requests a trial by jury on all issues in this case.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff prays that the Defendants be cited to appear and answer herein; that upon final trial herein, Plaintiff recovers damages as set forth above from Defendants, including cost of Court, pre-judgment and post-judgment interest at the legal rates, and punitive damages, and that Plaintiff receive such other and further relief, both general and special, at law and in equity, to which Plaintiff may be justly entitled under the facts and attending circumstances.

Done this 22nd day of May, 2006..

**ANDY D. BIRCHFIELD, JR. (BIR006)**
**J. PAUL SIZEMORE (SIZ004)**
**BENJAMIN L. LOCKLER (LOC009)**
**Attorneys for Plaintiff**

**OF COUNSEL:**

**BEASLEY, ALLEN, CROW,**
**METHVIN, PORTIS & MILES, P.C.**
Post Office Box 4160
Montgomery, AL 36103-4160
(334) 269-2343
(334) 223-1236 - Fax

**JURY DEMAND**

**PLAINTIFF HEREBY DEMANDS TRIAL BY JURY ON ALL ISSUES**

FILED

MAY 24 2006

DAVID S. NIX, CLERK
BARBOUR CO. ALABAMA

State of Alabama
Unified Judicial System

Form ARCiv-93 Rev.5/99

**COVER SHEET**
**CIRCUIT COURT – CIVIL CASE**
(Not For Domestic Relations Cases)

Case Number: CV

Date of Filing: Month Day Year

Judge Code:

## GENERAL INFORMATION

IN THE CIRCUIT COURT OF BARBOUR, ALABAMA
(Name of County)

ROSIE RUSSAW, et al. v. MERCK & CO., INC., et al.
Plaintiff Defendant

First Plaintiff ☐ Business ☑ Individual ☐ Government ☐ Other

First Defendant ☑ Business ☐ Individual ☐ Government ☐ Other

**NATURE OF SUIT:** Select primary cause of action, by checking box (check only one) the best characterizes your action:

**TORTS: PERSONAL INJURY**
- ☑ WDEA - Wrongful Death
- ☑ TONG - Negligence: General
- ☐ TOMV - Negligence: Motor Vehicle
- ☐ TOWA - Wantonness
- ☑ TOPL - Product Liability/AEMLD
- ☐ TOMM - Malpractice-Medical
- ☐ TOLM - Malpractice-Legal
- ☐ TOOM - Malpractice-Other
- ☑ TBFM - Fraud/Bad Faith/Misrepresentation
- ☐ TOXX - Other: ______

**TORTS: PERSONAL INJURY**
- ☐ TOPE - Personal Property
- ☐ TORE - Real Property

**OTHER CIVIL FILINGS**
- ☐ ABAN - Abandoned Automobile
- ☐ ACCT - Account & Nonmortgage
- ☐ APAA - Administrative Agency Appeal
- ☐ ADPA - Administrative Procedure Act
- ☐ ANPS - Adults in Need of Protective Services

**OTHER CIVIL FILINGS (cont'd)**
- ☐ MSXX - Birth/Death Certificate Modification/Bond Forfeiture Appeal/ Enforcement of Agency Subpoena/Petition to Preserve
- ☐ CVRT - Civil Rights
- ☐ COND - Condemnation/Eminent Domain/Right-of-Way
- ☐ CTMP - Contempt of Court
- ☐ CONT - Contract/Ejectment/Writ of Seizure
- ☐ TOCN - Conversion
- ☐ EQND - Equity Non-Damages Actions/Declaratory Judgment/Injunction Election Contest/Quiet Title/Sale For Division
- ☐ CVUD - Eviction Appeal/Unlawful Detainer
- ☐ FORJ - Foreign Judgment
- ☐ FORF - Fruits of Crime Forfeiture
- ☐ MSHC - Habeas Corpus/Extraordinary Writ/Mandamus/Prohibition
- ☐ PFAB - Protection From Abuse
- ☐ FELA - Railroad/Seaman (FELA)
- ☐ RPRO - Real Property
- ☐ WTEG - Will/Trust/Estate/Guardianship/Conservatorship
- ☐ COMP - Workers' Compensation
- ☐ CVXX - Miscellaneous Circuit Civil Case

**ORIGIN** (*check one*): F ☑ INITIAL FILING   A ☐ APPEAL FROM DISTRICT COURT   O ☐ OTHER: ______

R ☐ REMANDED   T ☐ TRANSFERRED FROM OTHER CIRCUIT COURT

**HAS JURY TRIAL BEEN DEMANDED?** ☑ YES ☐ NO

**Note:** Checking "Yes" does not constitute a demand for a jury trial. (See Rules 38 and 39, Ala.R.Civ.P, for procedure)

**RELIEF REQUESTED:** ☑ MONETARY AWARD REQUESTED ☐ NO MONETARY AWARD REQUESTED

ATTORNEY CODE: L O C 0 0 9

05/22/06
Date

[signature]
Signature of Attorney/Party filing this form

**MEDIATION REQUESTED:** ☐ YES ☑ NO ☐ UNDECIDED