Westlaw.

428 F.3d 1317
428 F.3d 1317, 18 Fla. L. Weekly Fed. C 1054
(Cite as: 428 F.3d 1317)

Page 1

C
Briefs and Other Related Documents

United States Court of Appeals, Eleventh Circuit.
Carl LEGG, Dorothy Legg, Plaintiffs-Appellees,
v.
WYETH, f.k.a. American Home Products Corporation, Wyeth Pharmaceuticals, Inc., f.k.a. Wyeth-Ayerst Labs, Inc., Defendants-Appellants.
No. 04-13489.

Oct. 25, 2005.

**Background:** Alabama resident and his wife brought state court action against drug manufacturer and individual sales representatives, alleging that resident's use of anti-obesity drug caused him to develop valvular heart disease. Defendants obtained removal, alleging fraudulent joinder. The United States District Court for the Northern District of Alabama, No. 04-00435-CV-S-NE, C. Lynwood Smith, Jr., J., granted plaintiffs' motion to remand the case and ordered manufacturer to pay plaintiffs' costs and attorneys' fees due to improper removal. Manufacturer appealed.

**Holdings:** The Court of Appeals, Cox, Circuit Judge, held that:

5(1) manufacturer's removal of action was not improvident and thus did not warrant award of attorneys' fees and costs, and

6(2) district court was required to consider undisputed sworn affidavits submitted by manufacturer in support of removal.

Reversed.

West Headnotes

[1] Removal of Cases 334 107(9)

334 Removal of Cases
　334VII Remand or Dismissal of Case
　　334k107 Proceedings for Remand and Review Thereof
　　　334k107(9) k. Review. Most Cited Cases
Court of Appeals may review the merits of a remand order in considering whether the district court abused its discretion by awarding attorneys' fees and costs incurred as result of removal. 28 U.S.C.A. § 1447(c, d).

[2] Removal of Cases 334 107(9)

334 Removal of Cases
　334VII Remand or Dismissal of Case
　　334k107 Proceedings for Remand and Review Thereof
　　　334k107(9) k. Review. Most Cited Cases
While Court of Appeals may not review the decision to remand a case to state court, Court must, as part of its examination of an award of fees upon remand, consider the objective validity of the removing party's efforts, at the time that party attempted to remove the case. 28 U.S.C.A. § 1447(c, d).

[3] Removal of Cases 334 107(9)

334 Removal of Cases
　334VII Remand or Dismissal of Case
　　334k107 Proceedings for Remand and Review Thereof
　　　334k107(9) k. Review. Most Cited Cases
Court of Appeals reviews for abuse of discretion a district court's award of attorneys' fees and costs upon remanding a case to state court, and, because an error of law is an abuse of discretion, an award of attorneys' fees based on a legally erroneous remand order constitutes an abuse of discretion. 28 U.S.C.A. § 1447(c).

[4] Federal Courts 170B 286.1

170B Federal Courts
　170BIV Citizenship, Residence or Character of Parties, Jurisdiction Dependent on
　　170BIV(B) Controversies Between Citizens of Different States
　　　170Bk286 Coplaintiffs and Codefendants
　　　　170Bk286.1 k. In General. Most Cited Cases
Federal diversity jurisdiction requires complete diversity, in that the citizenship of every plaintiff must be diverse from the citizenship of every defendant. 28 U.S.C.A. § 1332.

[5] Removal of Cases 334 107(11)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT E

428 F.3d 1317  
428 F.3d 1317, 18 Fla. L. Weekly Fed. C 1054  
(Cite as: 428 F.3d 1317)

Page 2

334 Removal of Cases  
    334VII Remand or Dismissal of Case  
        334k107 Proceedings for Remand and Review Thereof  
            334k107(11) k. Costs on Remand. Most Cited Cases  
Drug manufacturer's removal of product liability action to federal court was not improvident, and thus did not warrant award of attorneys' fees and costs to plaintiffs upon remand, as manufacturer supported its removal of action with undisputed affidavits of defendant sales representatives who manufacturer claimed were fraudulently joined to defeat diversity jurisdiction, and there was no basis, under Alabama law, for imposing liability upon nondiverse sales representatives. 28 U.S.C.A. §§ 1332, 1447(c).

[6] Removal of Cases 334 ⚖107(7)

334 Removal of Cases  
    334VII Remand or Dismissal of Case  
        334k107 Proceedings for Remand and Review Thereof  
            334k107(7) k. Evidence. Most Cited Cases  
District court was required to consider sworn affidavits submitted by defendant drug manufacturer in support of its removal of product liability action, based on manufacturer's claim of fraudulent joinder, where those affidavits were undisputed. 28 U.S.C.A. § 1447.

[7] Removal of Cases 334 ⚖107(7)

334 Removal of Cases  
    334VII Remand or Dismissal of Case  
        334k107 Proceedings for Remand and Review Thereof  
            334k107(7) k. Evidence. Most Cited Cases  
In a proceeding to resolve a claim of fraudulent joinder, which is asserted as basis for removing action to federal court, the district court must resolve all questions of fact in favor of the plaintiff, but there must be some question of fact before the district court can resolve that fact in the plaintiff's favor; when affidavits submitted by defendants are undisputed by plaintiffs, the court cannot then resolve facts in plaintiff's favor based solely on unsupported allegations in complaint. 28 U.S.C.A. § 1447.

[8] Fraud 184 ⚖30

184 Fraud  
    184I Deception Constituting Fraud, and Liability Therefor  
        184k30 k. Persons Liable. Most Cited Cases  
Under Alabama law, those who are only conduits through which faulty information is supplied by one person to a third person cannot be held liable for fraud unless they acted in bad faith.

[9] Products Liability 313A ⚖46.2

313A Products Liability  
    313AI Scope in General  
        313AI(B) Particular Products, Application to  
            313Ak46 Health Care and Medical Products  
                313Ak46.2 k. Drugs in General. Most Cited Cases  
Under Alabama law, drug manufacturer's sales representative, who never promoted or sold particular drug used by plaintiff, could not be liable to plaintiff for negligent misrepresentation in connection with drug's alleged causation of plaintiff's valvular heart disease.

[10] Corporations 101 ⚖336

101 Corporations  
    101X Officers and Agents  
        101X(D) Liability for Corporate Debts and Acts  
            101k336 k. Participation in Unauthorized or Wrongful Acts of Corporation. Most Cited Cases  
To hold an employee of a corporation personally liable for the negligent acts of the corporation, under Alabama law, there must have been upon his part such a breach of duty as contributed to, or helped bring about, the injury; that is, he must be a participant in the wrongful act.

[11] Removal of Cases 334 ⚖36

334 Removal of Cases  
    334III Citizenship or Alienage of Parties  
        334k36 k. Improper or Collusive Joinder of Parties. Most Cited Cases  
To negate a claim of fraudulent joinder, and support remand of action to state court, the potential for legal liability on part of the allegedly fraudulently joined defendant must be reasonable, not merely theoretical, and, in considering possible state law claims, "possible" must mean more than "such a possibility that a designated residence can be hit by a meteor tonight;" reason and common sense have some role. 28 U.S.C.A. § 1447.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

428 F.3d 1317                                                                                                          Page 3
428 F.3d 1317, 18 Fla. L. Weekly Fed. C 1054
(Cite as: 428 F.3d 1317)

*1318 Stephen Mann Brooks, Nelson, Mullins, Riley & Scarborough, L.L.P., Atlanta, GA, Robert D. Rosenbaum, Arnold & Porter, LLP, Washington, DC, for Defendants-Appellants.
*1319 Joseph A. Zarzaur, Jr., J. Phillip Warren, McKenzie, Taylor & Zarzaur, P.A., Pensacola, FL, for Plaintiff-Appellees.

Appeal from the United States District Court for the Northern District of Alabama.

Before EDMONDSON, Chief Judge, and BIRCH and COX, Circuit Judges.

COX, Circuit Judge:
Plaintiffs, Dorothy and Carl Legg (the "Leggs"), filed a seven-count complaint in an Alabama state court against several defendants, including some Wyeth entities, Indevus Pharmaceuticals, Inc., and three Wyeth sales representatives. Wyeth removed this case to federal court, contending that the Plaintiffs fraudulently joined three of Wyeth's sales representatives as defendants in an effort to defeat federal diversity jurisdiction. On the Plaintiffs' motion, the court remanded the case, and ordered that Wyeth pay the Plaintiffs' attorneys' fees and costs under 28 U.S.C. § 1447(c) as Wyeth's removal had been "improper." (R.2-24 at 2.) Wyeth appeals the district court's order awarding attorneys' fees and costs to the Plaintiffs. We reverse.

I. BACKGROUND & PROCEDURAL HISTORY

Carl and Dorothy Legg, citizens of Alabama, brought this action in the Circuit Court of Madison County, Alabama against Wyeth, a citizen of Delaware and New Jersey, Indevus Pharmaceuticals, Inc., a citizen of Delaware and Massachusetts, and three Wyeth sales representatives: Stacy Stubblefield, Michael Sullivan, and Betsy Weaver. Sullivan is alleged to be a citizen of Georgia; Stubblefield and Weaver are alleged to be citizens of Alabama. Carl Legg contends he took Wyeth's anti-obesity drug Redux and, as a result, developed valvular heart disease. Dorothy Legg claims loss of consortium.

Wyeth removed the matter to the United States District Court for the Northern District of Alabama. Wyeth alleged that federal jurisdiction was proper under 28 U.S.C. § 1332 (diversity jurisdiction), and that the Leggs fraudulently joined three sales representatives to destroy diversity. Wyeth attached affidavits of the sales representatives in support of its contention that the sales representatives were fraudulently joined. Wyeth then moved to transfer the case to the United States District Court for the Eastern District of Pennsylvania for consolidation with similar cases pending before the Multi-District Litigation Panel. Before reviewing that motion, the district court granted the Leggs's motion to remand, concluding that diversity did not exist. The court found that the sales representatives were not fraudulently joined because there was a "possibility" that the Leggs could prevail in their claims against them. The court reached this conclusion on the face of the complaint, concluding that it could not consider the affidavits provided by Wyeth. The court also concluded that the Leggs stated a possible cause of action for innocent or negligent misrepresentation against Betsy Weaver, even if her affidavit was taken as true. In a separate order, the district court granted the Leggs attorneys' fees and costs in the amount of $1,982.49. Wyeth appeals the grant of attorneys' fees and costs.

II. STANDARD OF REVIEW

[1] [2] [3] We may review the merits of a remand order in considering whether the district court abused its discretion by awarding attorneys' fees and costs under 28 U.S.C. § 1447(c). Fowler v. Safeco Ins. Co. of Am., 915 F.2d 616, 617 (11th Cir.1990). While 28 U.S.C. § 1447(d) bars our *1320 review of a remand such as this one based on lack of subject matter jurisdiction, the statute does not "exclude the district court's assessment of costs from appellate review." Id. at 617. As the Fifth Circuit has explained, "[w]hile we may not review the decision to remand itself, we must, as part of our examination of the award of fees, consider the objective validity of the removing party's efforts, at the time that party attempted to remove the case." Hornbuckle v. State Farm Lloyds, 385 F.3d 538, 541 (5th Cir.2004). We review the district court's award of attorneys' fees and costs for an abuse of discretion. Fowler, 915 F.2d at 617. An error of law is an abuse of discretion. Wexler v. Lepore, 385 F.3d 1336, 1338 (11th Cir.2004). Therefore, an award of attorneys' fees based on a legally erroneous remand order constitutes an abuse of discretion.

III. CONTENTIONS OF THE PARTIES

Wyeth contends on appeal that the district court erred in concluding that Wyeth's removal was improper, and therefore that no fees or costs should have been awarded the Leggs. Wyeth argues that the district

court erred in refusing to consider unrebutted evidence submitted by it in support of removal. Wyeth also argues that the district court erred in concluding that the Leggs stated possible claims against Betsy Weaver based on innocent or negligent misrepresentation, even if her affidavit was taken as true. The Leggs defend the decision of the district court, and assert that the decision to award fees and costs was not an abuse of discretion, even if we would have decided the matter differently.

IV. DISCUSSION

[4] This lawsuit by the Leggs is but one of thousands of cases brought by plaintiffs across the country who claim they suffer from valvular heart disease because they took one of Wyeth's diet drugs.[FN1] A common strategy employed by the plaintiffs in these cases is to name local parties, often Wyeth's local sales representatives, as defendants, thus defeating Wyeth's right to remove a case to federal court.[FN2] The Multidistrict Litigation Court, which has overseen a large part of this litigation, concluded that this joinder can "only be characterized as a sham, at the unfair expense not only of [Wyeth] but of many individuals and small enterprises that are being unfairly dragged into court simply to prevent the adjudication of lawsuits against [Wyeth], the real target, in a federal forum." *Anderson v. Am. Home Prods. Corp.*, 220 F.Supp.2d 414, 425 (E.D.Pa.2002). Indeed, there are dozens of district court decisions finding that Wyeth sales representatives were fraudulently joined as defendants to defeat federal*1321 diversity jurisdiction.[FN3] Wyeth contends that this is such a case.

FN1. These lawsuits were consolidated by the Judicial Panel on Multidistrict Litigation in the United States District Court of the Eastern District of Pennsylvania. A Nationwide Class Action Settlement Agreement was then executed by Wyeth and the diet drug plaintiffs. See *In re Diet Drugs*, Nos. 1203, 99-20593, 2000 WL 1222042, at *5 (E.D.Pa. Aug. 28, 2000). The Settlement Agreement permits Class Members who meet certain eligibility criteria to opt out and assert a claim against Wyeth in the tort system. The Leggs opted out of the Settlement Agreement. Wyeth estimates that approximately 50,000 plaintiffs have opted out and filed suit. Appellant Br. at 5.

FN2. Federal diversity jurisdiction under 28 U.S.C. § 1332 requires "complete diversity"-the citizenship of every plaintiff must be diverse from the citizenship of every defendant. *See, e.g., Palmer v. Hosp. Auth. of Randolph County*, 22 F.3d 1559, 1564 (11th Cir.1994).

FN3. For examples from this circuit, see *Clay v. Wyeth*, No. 5:04-cv-192-OC-10GRJ at 14 (M.D.Fla. Aug. 17, 2004) (magistrate judge's report and recommendation noting that the plaintiff "has offered nothing-whether sworn or unsworn" to rebut the sworn statements made by the sales representative and concluding that Wyeth's removal of the case was proper); *Sobowski v. Wyeth*, No. 5:04-cv-96-Oc-10GRJ at 3-4 (M.D.Fla. June 24, 2004) (considering defendants' affidavits and finding that the evidence "does not give rise to a reasonable inference that the sales representatives knew or should have known of the drug's harmful effects" and that the representatives were "joined only to prevent removal"); *Davis v. Wyeth*, No. 4:03-cv-128 (CDL) at 13 (M.D.Ga. June 10, 2004) (concluding that plaintiff's evidence did not refute the defendants' "sworn affidavit statements that they had no knowledge that the diet drugs were linked to valvular heart disease," and finding that the joinder of the non-diverse defendants was fraudulent); *Fowler v. Wyeth*, No. 3:04-cv-83/MCR at 8-9 (N.D.Fla. May 14, 2004) (concluding that based on defendants' declarations that they did not sell the diet drug, plaintiffs could not maintain any of their asserted causes of action; also noting that once "Wyeth presented the declarations to the Court, Plaintiffs could not continue to rely upon their unsupported allegations in the complaint"); *Lewis v. Wyeth*, No. 3:04-cv-81/MCR at 8 (N.D.Fla. Apr. 29, 2004) (similarly concluding that the sales representative's "uncontroverted declaration is sufficient to demonstrate that he was fraudulently joined in this lawsuit"); *Petty v. Wyeth*, No. 3:04-cv-82/MCR at 8-9 (N.D.Fla. Apr. 28, 2004) (finding that the "uncontroverted declarations of [the sales representatives] are sufficient to demonstrate that they were fraudulently joined in this lawsuit").

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

428 F.3d 1317
428 F.3d 1317, 18 Fla. L. Weekly Fed. C 1054
(Cite as: 428 F.3d 1317)

Page 5

The Leggs named three local sales representatives as defendants in this case. Michael Sullivan, the first sales representative named as a defendant in this suit, submitted an affidavit to the district court stating that he is "a citizen and resident of the State of Georgia." (R.1-1 at Ex. B.) If that is true, Sullivan's presence would not defeat diversity jurisdiction. The second sales representative, Stacy Stubblefield, claims he never sold Redux. In his affidavit, Stubblefield swore that he "never advertised, assembled, created, designed, detailed, distributed, labeled, made, manufactured, marketed, packaged, promoted, sold, sterilized, supplied, tested, or warranted Pondimin or Redux, or trained [ ] anyone to do so." (R.1-1 at Ex. B.) Finally, the third sales representative, Betsy Weaver, admitted that she "promoted Redux to licensed healthcare providers and answered their questions about the drug based on information provided to me by Wyeth." (Id.) However, Weaver asserts that she had no knowledge of Redux's alleged association with valvular heart disease until the allegation was first publicized:

My knowledge of the drugs I detailed was derived exclusively from education provided to me by Wyeth. Wyeth provided me with the FDA-approved package inserts and other information regarding the drugs I detailed. I had no involvement in the development or preparation of package inserts for any drugs, and had no control over content or other written warnings.

I was not expected, as a field sales representative, to conduct independent research regarding the drugs I detailed, and did not do so. I was not expected to, and did not, review independent scientific studies published in journals unless they were supplied to me by Wyeth.

I was not aware of any alleged association between Pondimin and/or Redux and valvular heart disease until the time such an allegation was first publicized. I was not aware before that time of any published study, report or other literature which claimed that an association exists between Pondimin and/or Redux and valvular heart disease.

*1322 (Id.) Wyeth attached these three affidavits as exhibits to its notice to remove this case to federal court. In the notice of removal, Wyeth alleged that the action could have originally been filed in federal court because complete diversity of citizenship exists between the properly joined parties, and that the three sales representatives were fraudulently joined.

In response to the sales representatives' affidavits, the Plaintiffs did not dispute Sullivan's sworn statement that he was a citizen of Georgia, nor did they respond to Stacey Stubblefield's sworn statement that he never promoted or sold Redux. In an effort to rebut Weaver's sworn statement that she did not know of Redux's alleged connection with valvular heart disease, the Plaintiffs pointed out to the district court that all of Wyeth's sales representatives had to participate in a Sales Training Program. The Plaintiffs submitted to the court a copy of Wyeth's Sales Training Program. (R.2-14 Ex. B.) But the document does not contain any warning to the sales representatives that Redux may cause valvular heart disease. Nor does the corresponding package insert, provided as a part of the Sales Training Program, provide any warning to the sales representatives that Redux may cause valvular heart disease. Thus, the material the Plaintiffs submitted to the court in fact reinforces Weaver's sworn statement that she was never told by the company that Redux may cause valvular heart disease and did not learn of the risk until it first became publicly known. [FN4]

> FN4. Not only did the Plaintiffs fail to dispute Weaver's sworn statement that she did not know that Redux may cause valvular heart disease, the Plaintiffs also failed to show that Weaver had ever promoted or sold the drug to Carl Legg's prescribing physician. Legg's prescribing physician was not identified in the complaint. (R.1-1 Ex. A.) The Plaintiffs did submit affidavits from four other physicians, but none of these doctors were Legg's prescribing physician, nor did they have any connection to this case. (R.2-14 Ex. A.)

The district court refused to consider the affidavits by the sales representatives. Instead, the court concluded that the Plaintiffs stated a possible cause of action for fraud against both Stubblefield (who said he never sold the drug) and Weaver (who sold it, she said, not knowing it could be dangerous). The court reasoned that the questions of whether the individual defendants "actually sold or promoted Redux, and whether the individual defendants actually conveyed incorrect or misleading information to [P]laintiff Carl Legg's healthcare providers, both go to the merits of plaintiffs' claims." (R.2-19 at 10.) In reaching its conclusion that the Plaintiffs stated a possible cause of action against the sales representatives, the district court relied solely on various allegations in the Plaintiffs' complaint. (R.2-19 at 9-11.)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

428 F.3d 1317  
428 F.3d 1317, 18 Fla. L. Weekly Fed. C 1054  
(Cite as: 428 F.3d 1317)

Page 6

[5] We conclude that Wyeth's efforts to remove this case to federal court were objectively valid and reasonable. "Costs are assessed in a case of 'improvident removal.'" *Fowler, 915 F.2d. at 618.* This is not a case of improvident removal. Wyeth presented the court with affidavits from its sales representatives to establish that they were fraudulently joined. The district court erred in refusing to consider these affidavits.

[6] [7] We have explained before that "[t]he determination of whether a resident defendant has been fraudulently joined must be based upon the plaintiff's pleadings at the time of removal, *supplemented by any affidavits and deposition transcripts submitted by the parties.*" *Pacheco de Perez v. AT&T Co., 139 F.3d 1368, 1380 (11th Cir.1998)* (emphasis added). The proceeding "for resolving a claim of fraudulent joinder is similar to *1323 that used for ruling on a motion for summary judgment under Fed.R.Civ.P. 56(b)." *Crowe v. Coleman, 113 F.3d 1536, 1538 (11th Cir.1997)* (quoting *B, Inc. v. Miller Brewing Co., 663 F.2d 545, 549 n. 9 (5th Cir. Unit A 1981)).* In such a proceeding, the district court must "resolve all questions of fact ... in favor of the plaintiff." *Cabalceta v. Standard Fruit Co., 883 F.2d 1553, 1561 (11th Cir.1989).* But there must be some question of fact before the district court can resolve that fact in the plaintiff's favor. In this case, for example, the Plaintiffs did not dispute Stubblefield's sworn statement that he never promoted or sold the drug Redux. With no response from the Plaintiffs, there was no question of fact for the court to resolve. The same goes for Weaver, who asserted that she did not know Redux may cause valvular heart disease. The Plaintiffs offered no evidence to dispute this sworn statement. When the Defendants' affidavits are undisputed by the Plaintiffs, the court cannot then resolve the facts in the Plaintiffs' favor based solely on the unsupported allegations in the Plaintiffs' complaint. As the Fifth Circuit has explained:

While such a procedure requires that all *disputed* questions of fact be resolved in favor of the nonmoving party, as with a summary judgment motion, in determining diversity the mere assertion of metaphysical doubt as to the material facts [is] insufficient to create an issue if there is no basis for those facts. So also as with a summary judgment motion:

[W]e resolve factual controversies in favor of the nonmoving party, but *only* when there is an actual controversy, that is, when *both* parties have submitted *evidence* of contradictory facts. We do not, however, *in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts.*

*Badon v. RJR Nabisco, Inc., 224 F.3d 382, 393-94 (5th Cir.2000)* (emphasis in original) (internal citations omitted).

In ignoring the Defendants' affidavits in this case, the district court relied on our holding in *Crowe v. Coleman, 113 F.3d 1536 (11th Cir.1997). Crowe,* however, did not preclude relying on affidavits in resolving a question of fraudulent joinder. In fact, in *Crowe,* as in our other cases addressing fraudulent joinder, we found it entirely proper for the district court to consider affidavits submitted by the defendants. *See id. at 1538* (In considering a removal alleging fraudulent joinder, "the court may consider affidavits and deposition transcripts submitted by the parties."). The defendants' affidavits in *Crowe* were properly before the district court, and "we [took] them into account in deciding the limited question of whether a possibility exists that Plaintiffs have stated a ... cause of action against Coleman." *Id. at 1541.* The district court erred in *Crowe* because it resolved the case in the defendants' favor when there were sworn statements submitted by *both* the defendants and the plaintiffs. In the case at bar, the Defendants submitted sworn affidavits that were undisputed and, in such a case, a court cannot resolve the question of fraudulent joinder by refusing to consider the defendants' submissions. But that is clearly what the district court did. In doing so, the district court committed a legal error, and a legal error is an abuse of discretion. *See Wexler, 385 F.3d at 1338.*

[8] The district court articulated another reason for ignoring Weaver's affidavit and remanding the case to state court. The district court reasoned that even if Weaver had no pre-publicity knowledge that Redux may cause valvular heart disease, she might still be liable in Alabama courts for innocent or negligent misrepresentation. But on this record, this conclusion*1324 has no support in Alabama law. In *Fisher v. Comer Plantation, Inc., 772 So.2d 455 (Ala.2000),* the Alabama Supreme Court held that "those who are only conduits through which faulty information is supplied by one person to a third person cannot be held liable for fraud unless they acted in bad faith." *Id. at 463.* Assuming that Weaver innocently passed on incorrect information about Redux to Carl Legg's physician, under *Fisher* she could not be liable for innocent misrepresentation. *See also Montgomery Rubber & Gasket Co. v. Belmont Mach. Co., 308 F.Supp.2d*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1293, 1298 (M.D.Ala.2004) ("At most, [plaintiff] alleges that [defendant agent] was an innocent conduit through which [defendant seller] defrauded [plaintiff]. As [the defendant agent] correctly notes, forwarded information that is incorrect cannot form the basis of liability unless the information was relayed in bad faith.") (citing Fisher, 772 So.2d at 463).

[9] The Plaintiffs, in their complaint, allege that "[e]ach of the [d]efendants negligently and recklessly represented ... that Redux was safe to ingest and that the utility of Redux outweighed any risk in use for the intended purpose of weight loss or control." (R.1-1 Ex. A. at ¶ 83.) Astonishingly, the Plaintiffs make this allegation against *all* the individual Defendants, including Stacy Stubblefield, who swore under oath that he never promoted or sold Redux. This sworn statement was never disputed by the Plaintiffs. With no evidence that Stubblefield had anything to do with Redux, there is no reasonable possibility that Plaintiffs can establish a cause of action against him for negligent misrepresentation under Alabama law.

[10] Nor is there any reasonable possibility, based on this record, that Plaintiffs can establish a cause of action for negligent misrepresentation against Betsy Weaver. The Alabama Supreme Court has adopted the Restatement (Second) of Torts § 552 (1997) as the law of Alabama in cases involving negligent misrepresentation. Fisher, 772 So.2d at 461 (citing Boykin v. Arthur Andersen & Co., 639 So.2d 504, 509-10 (Ala.1994)). In applying the elements of the claim from the Restatement, Alabama's Supreme Court instructs that liability for negligent misrepresentation is "predicated upon the existence of a duty." Fisher, 772 So.2d at 463 (citing Colonial Bank of Alabama v. Ridley & Schweigert, 551 So.2d 390, 395 (Ala.1989)). To hold an employee of a corporation personally liable for the negligent acts of the corporation, "there must have been upon his part such a breach of duty as contributed to, or helped bring about, the injury; that is to say, he must be a participant in the wrongful act." Crigler v. Salac, 438 So.2d 1375, 1380 (Ala.1983) (quoting Fletcher's Cyclopedia of Corporations § 1137 at 208 (1975)); see also Turner v. Hayes, 719 So.2d 1184, 1188 (Ala.Civ.App.1997) ("[C]orporate employees are liable personally for the wrongful action of the company or its other employees only if they personally participate in the tort.").

[11] Plaintiffs have not presented any evidence that Weaver knew of any valvular heart disease risk, nor have Plaintiffs presented any evidence to support the allegation that Weaver should have known of this risk. Without this evidence, there is no reasonable possibility that an Alabama court would conclude that Weaver personally breached a duty to the Plaintiffs. If Wyeth knew or should have known of Redux's harmful effects and did not tell Weaver, that might be a basis for a claim against Wyeth, but it would not support the conclusion that Weaver herself "personally participated in the tort" or breached a duty to the Plaintiffs. See Turner, 719 So.2d at 1188. Quite simply, there is no reasonable basis to predict that an Alabama court would find Weaver, as an individual employee, personally liable for any *1325 wrongful action by Wyeth in the absence of evidence that Weaver either knew or should have known of Redux's allegedly dangerous effects.[FN5]

> FN5. The potential for legal liability "must be reasonable, not merely theoretical." Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 312 (5th Cir.2002). In considering *possible* state law claims, possible must mean "more than such a possibility that a designated residence can be hit by a meteor tonight. That is possible. Surely, as in other instances, reason and common sense have some role." Braden v. Wyeth, CV-04-PT-235-E (N.D. Ala. June 30, 2004). Without any evidence that Weaver knew or should have known Redux was dangerous, it is hard to conclude, applying reason and common sense, that the Plaintiffs have a viable claim against her under Alabama law.

The removal process was created by Congress to protect defendants. Congress "did not extend such protection with one hand, and with the other give plaintiffs a bag of tricks to overcome it." McKinney v. Bd. of Trustees of Mayland Cmty. Coll., 955 F.2d 924, 928 (4th Cir.1992) (quoting McKinney v. Bd. of Trustees of Mayland Cmty. Coll., 713 F.Supp. 185, 189 (W.D.N.C.1989)). As the Supreme Court long ago admonished, "the Federal courts should not sanction devices intended to prevent a removal to a Federal court where one has that right, and should be equally vigilant to protect the right to proceed in the Federal court." Wecker v. Nat'l Enameling & Stamping Co., 204 U.S. 176, 186, 27 S.Ct. 184, 188, 51 L.Ed. 430 (1907). Given that the record supports Wyeth's allegation that these sales representatives were fraudulently joined by the Plaintiffs, there was nothing "improvident" or unreasonable in Wyeth's

428 F.3d 1317
428 F.3d 1317, 18 Fla. L. Weekly Fed. C 1054
(Cite as: 428 F.3d 1317)

Page 8

effort to remove this case to federal court. *See Fowler*, 915 F.2d. at 616. Thus, the district court abused its discretion in awarding attorneys' fees and costs to the Plaintiffs.

## V. CONCLUSION

The judgment of the district court awarding the Leggs attorneys' fees and costs is REVERSED.

C.A.11 (Ala.),2005.
Legg v. Wyeth
428 F.3d 1317, 18 Fla. L. Weekly Fed. C 1054

Briefs and Other Related Documents (Back to top)

• 04-13489 (Docket) (Jul. 15, 2004)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.